ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

Filed  3:45  P.M.

AUG 1 5 2003

DEPUTY CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

| | |
|---|---|
| JUAN DUQUE-TOVAR, ANTONIO MALDONADO-GARCIA, PABLO RODRIGUEZ-CAZARES, ENRIQUE SANTIAGO-SANCHEZ, on behalf of themselves and all other similarly situated persons, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| GEORGIA GROWERS ASSOCIATION, INC.; BASS PRODUCE, INC. ; MCLAIN FARMS, INC.; LEWIS TAYLOR FARMS, INC.; WENDELL ROBERSON FARMS, INC.; GERALD WOMACK, d/b/a WOMACK FARMS, AND ROSCOE MEEKS d/b/a ROSCOE MEEKS & SONS; GIBBS PATRICK FARMS, INC.; HAMILTON GROWERS, INC.; JOE AND TERRY BAKER, d/b/a BAKER FARMS; BIG 6 FARMS, LLC; DICKEY FARMS, INC.; GEORGIA CANTALOUPE COMPANY, INC.; L.G. HERNDON JR. FARMS, INC.; SOUTHERN ORCHARD SUPPLY CO., INC., d/b/a LANE PACKING CO.; JEFF WAINWRIGHT d/b/a TAYLOR ORCHARDS; on behalf of themselves and all other similarly situated members or former members of the Georgia Growers Association, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

COMPLAINT

CLASS ACTION

CIVIL ACTION NO:

3-CV- 01 2 8-2

## PRELIMINARY STATEMENT

1.      This is a representative action under 29 U.S.C. § 216(b) of the Fair Labor

Standards Act ("FLSA") and a class action under Georgia contract law by workers who

were employed to perform agricultural labor in Georgia in 2000, 2001, 2002, and 2003



pursuant to the "H-2A Program."[1]  Suit is filed against a class of defendants ("Defendant Class") which consists of the Georgia Growers Association, Inc., its current and former member growers, and other Georgia agricultural employers who jointly participated in a scheme to shift costs properly borne by the employer to the named Plaintiffs and the other class members.  The Defendant Class is linked by its uniform failure to properly pay for and/or reimburse costs associated with the H-2A program and by its employment of the Plaintiffs and the class of workers that the Plaintiffs seek to represent under the provisions of the H-2A Program.  Plaintiffs allege that the Defendants failed to pay at least the applicable minimum wage for all hours worked as required by the FLSA in their first week of work at the start of each contract.  In addition, Plaintiffs contend that the Defendants breached their contracts by failing to provide transportation benefits to them as required by their employment contracts and applicable federal regulations at 20 C.F.R. § 655.102(b)(5), and by failing to reimburse Plaintiffs for pre-employment expenses, including but not limited to:  transportation costs; visa costs and visa application fees; immigration fees; and recruitment fees.

2.     With respect to their contract claims, Plaintiffs seek relief on behalf of themselves and all similarly-situated workers pursuant to Rule 23 of the Federal Rules of Civil Procedure.

---

[1]  The H-2A program is designed to assist agricultural employers in the United States by granting aliens temporary visas so they can come to the United States and work.  *See* 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1).  Aliens admitted in this fashion are commonly referred to as "H-2A workers."

3.      The plaintiffs seek money damages, along with declaratory and injunctive relief, to redress these violations of law and contractual breaches.

## JURISDICTION

4.      This Court has jurisdiction over the subject matter of this action pursuant to 29 U.S.C. § 216(b), because this action arises under the FLSA, and pursuant to 28 U. S.C. §§ 1331 and 1337, and 28 U.S.C. § 1367(a).

5.      This Court has supplemental jurisdiction over the claims arising under state law, because these claims are so related to the federal claims that they form part of the same case or controversy.

6.      This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      On the date on which this action was filed and in the three-year (3) time period immediately preceding that date, Defendants conducted regular and substantial business activities in Georgia.  Therefore, each of the Defendants was subject to the personal jurisdiction of this court at the time this action was commenced.

## VENUE

8.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), and 29 U.S.C. § 216(b).

## PARTIES

9.      Named Plaintiffs Juan Duque-Tovar, Antonio Maldonado-Garcia, Enrique Santiago-Sanchez, and Pablo Rodriguez-Cazares are citizens of Mexico who were admitted to the United States on a temporary basis pursuant to 8 U.S.C. § 1101

(a)(15)(H)(ii)(a) to perform agricultural labor on a seasonal and/or temporary basis on Defendants' farms. During this employment by the Defendants, Plaintiffs were engaged in interstate commerce, and/or were employed in an enterprise engaged in commerce or in the production of goods for commerce operated by one or more of the Defendants within the meaning of 29 U.S.C. § 203(s)(1)(A).

10.     At all times relevant to this action, Defendants were employers as defined by the FLSA, 29 U.S.C. §§ 203(d) and 203(g).

11.     At all times relevant to this action, Defendant Georgia Growers Association, Inc. ("GGA") is and has been an incorporated association of agricultural producers and employers and a joint employer of the Plaintiffs and the class of workers that they seek to represent within the meaning of 20 C.F.R. § 655.101(a)(3) and 29 U.S.C. §§ 203(d) and (g). At all times relevant to this action, Dan Bremer has been the agent for GGA and has acted as agent for all the agricultural growers listed as named Defendants in this Complaint. At all times relevant to this action, Kent T. Hamilton is and has been the registered agent for service of process on GGA. GGA, through Mr. Hamilton, may be served with process at 2775 Ellenton-Norman Park Road, Norman Park, GA 31771.

12.     Defendant Bass Produce, Inc. is a Georgia corporation based in Americus, Georgia, and may be served with process through its registered agent, N. Earl Bass, Jr., at 1304 Elm Avenue, Apt. 4, Americus, GA 31709.

13.     Defendant McLain Farms, Inc. is a Georgia corporation based in Lyons, Georgia, and may be served with process through its registered agent, James L. McLain, at 534 McLain Cemetery Road, Lyons, GA 30436.

4

14.    Defendant Lewis Taylor Farms, Inc. is a Georgia corporation based in Tifton, Georgia, and may be served with process through its registered agent, William L. Brim, at 25 Sandhammock Lake Road, Tifton, GA  31793.

15.    Defendant Wendell Roberson Farms, Inc. is a Georgia corporation based in Tifton, Georgia, and may be served with process through its registered agent, T. Mark Sandifer, 3300 Fullwood Road, Tifton, GA  31794.

16.    Defendant Gerald Womack d/b/a Womack Farms and Defendant Roscoe Meeks d/b/a Roscoe Meeks & Sons, are individuals whose farming operations are based in Hazelhurst, Georgia and West Green, Georgia, respectively.  Womack Farms may be served with process at Route 1, Box 1685, Hazelhurst, GA  31539.  Roscoe Meeks & Son may be served with process at 6229 New Forest Road, West Green, GA  31567.

17.    Defendant Gibbs Patrick Farms, Inc. is a Georgia corporation based in Omega, Georgia, and may be served with process through its registered agent, James Patrick, Jr., at Highway 319, Omega, GA  31775.

18.    Defendant Hamilton Growers, Inc. is a Georgia corporation based in Norman Park, Georgia, and may be served with process through its registered agent, Wanda Hamilton-Tyler, at 2775 Ellenton-Norman Park Road, Norman Park, GA  31771.

19.    Defendants Joe Baker and Terry Baker, d/b/a Baker Farms, are individuals who, in the three-year time period immediately preceding the filing of this Complaint, did business in Norman Park, Georgia, under the name "Baker Farms."  Baker Farms may be served process through its registered agent, Terry W. Baker, at 299 Terry Baker Road, Norman Park, GA  31771.

20.     Defendant Big 6 Farms, LLC is a Georgia company based in Fort Valley, Georgia, and may be served with process through its registered agent, Alfred L. Pearson, Jr., at 5575 Zenith Mill Road, Fort Valley, GA  31030.

21.     Defendant Dickey Farms, Inc. is a Georgia corporation based in Musella, Georgia, and may be served with process through its registered agent, G. Boone Smith, III, at 230 Third Street, Macon, GA  31208.

22.     Defendant Georgia Cantaloupe Company, Inc. is a Georgia corporation based in Rochelle, Georgia, and may be served with process through its registered agent, W. C. Teal, at 1029 First Avenue, Rochelle, GA  31079.

23.     Defendant L.G. Herndon Jr. Farms, Inc. is a Georgia corporation based in Lyons, Georgia, and may be served with process through its registered agent, L.G. Herndon, Jr., at 1188 Lawson Road, Lyons, GA  30436.

24.     Defendant Southern Orchard Supply Co., Inc., d/b/a Lane Packing Co., is a Georgia corporation based in Fort Valley, Georgia, and may be served with process through its registered agent, Duke Lane, Jr., at 305 Magnolia Street, Fort Valley, GA 31030.

25.     Defendant Jeff Wainwright d/b/a Taylor Orchards is an individual whose farming operations are based in Reynolds, Georgia, and may be served with process at Highway 96 West, Reynolds, GA  31076.

## STATUTORY AND REGULATORY STRUCTURE

26.     An agricultural employer in the United States may import aliens to perform labor of a temporary nature if the United States Department of Labor certifies (1) that there are

insufficient available workers within the United States to perform the job, and (2) that the employment of aliens will not adversely affect the wages and working conditions of similarly-employed United States workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1). Aliens admitted in this fashion are commonly referred to as "H-2A workers."

27.     Agricultural employers seeking the admission of H-2A workers must file a temporary labor certification application with the United States Department of Labor. 20 C.F.R. §§ 655.101(a)(1) and (b)(1). This application must include a job offer, commonly referred to as a "clearance order" or "job order," complying with applicable regulations, which is used in the recruitment of both U.S. and H-2A workers. 20 C.F.R. § 655.101(b)(1). These regulations establish the minimum benefits, wages and working conditions which may be offered in order to avoid adversely affecting similarly-employed United States workers. 20 C.F.R. §§ 655.0(a)(2) and 655.102(b).

28.     As a condition of receiving temporary labor certification for the importation of H-2A workers, agricultural employers are required to provide or pay for the transportation of qualifying workers between the place of employment and the place from which the worker came to work for the employer. 20 C.F.R. § 655.102(b)(5). Workers who complete the first half of the contract period qualify for payment of their inbound transportation expenses while workers who complete the entire work contract period also qualify for outbound transportation benefits. 20 C.F.R. §§ 655.102(b)(5)(i) and (ii).

29.     The "clearance order," which becomes the job contract of the employed workers, must also agree to pay, during each workweek, the highest of the Adverse Effect Wage Rate, the federal minimum wage, or the state minimum wage. 20 C.F.R. § 655.102(b)(9).

## FLSA COLLECTIVE ACTION ALLEGATIONS

30.    All claims set forth in Count I are brought by the Plaintiffs on behalf of themselves and all other similarly-situated persons pursuant to the collective action mechanism of the FLSA, 29 U.S.C. § 216(b).

31.    Plaintiffs maintain this FLSA action under 29 U.S.C. § 216(b) for each similarly situated employee against Defendants in the three (3) year time period immediately preceding the date on which this action was filed.

32.    Pursuant to the statutory class action procedure specified at 29 U.S.C. § 216(b), Plaintiffs file this collective action claim for each similarly situated statutory class member who files, will file, or who has filed a written consent to be a party to this class action pursuant to 29 U.S.C. § 216(b).

33.    This statutory class of similarly situated persons under 29 U.S.C. § 216(b) is based upon the failure of the Defendants to reimburse the named Plaintiffs and the statutory plaintiff class for certain transportation, visa, and recruitment expenses that the named Plaintiffs and the statutory class they seek to represent incurred prior to the first week of employment.  Because these costs were primarily for the benefit of the Defendants, the Plaintiffs and other similarly situated workers' wages (when reduced by these expenses) fell below the applicable minimum wage for all hours worked in the first week of employment as established by 29 U.S.C. § 206.

## RULE 23 CLASS ACTION ALLEGATIONS

34.     All claims set forth in Count II are brought by the Plaintiffs on behalf of themselves and all other similarly-situated persons pursuant to Rule 23 of the Federal Rules of Civil Procedure.

35.     The Plaintiffs seek to represent a class consisting of all individuals who were admitted to the United States on a temporary basis pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a) for employment on the operations of Defendants' farms.

36.     The members of the class are so numerous and so geographically dispersed as to make joinder impracticable. Joinder of all class members would be impracticable if not impossible based upon their extreme geographic dispersion within and without the state of Georgia, including countries other than the United States of America, and by the language barriers imposed by the inability of a significant number of those class members to speak English. The precise number of individuals in the class is known only to the Defendants, but the class is believed to consist of more than 2000 persons. The class members are indigent citizens of Mexico who maintain their permanent residences in rural areas throughout Mexico. The relatively small size of the individual claims and the indigency of the class members make maintenance of individual actions economically infeasible.

37.     There are questions of law common to the class. Each of the class members was employed under employment contracts which were similar in all relevant respects. The common questions of law in this litigation include whether the Defendants'

reimbursement policies breached federal law incorporated into these employment contracts.

38.    The claims of the named Plaintiffs as set forth in Count II are typical of those of the class members.  The contractual breaches complained of in that Count resulted from the Defendants' employment policies and practices applicable to all of the H-2A workers each of them employed.  The contractual breaches also resulted from Defendants' failure to comply with the Fair Labor Standards Act, as incorporated into the job order, and from the Defendants' failure to pay the higher federal minimum wages in the first week as required by the job order and the federal regulation the job order incorporates.  20 C.F.R. § 655.102(b)(9).

39.    The named Plaintiffs will fairly and adequately represent the interests of the class. The Plaintiffs' interests are co-extensive with those of the class members and are in no way antagonistic or adverse to those of the other class members.

40.    Counsel for the Plaintiffs are experienced litigators who have served as counsel for several class actions and are experienced in conducting class actions in federal and state courts.  Plaintiffs' counsel is prepared to advance necessary costs to litigate this case, including the costs of notice to the class members.  The Defendants have substantial resources with which to pursue their defenses in this action.

41.    The common questions of law set forth in Count II predominate over any questions affecting only individual class members.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The class members have no appreciable interest in individually controlling the prosecution of

separate actions.  It is desirable to concentrate the litigation of all claims encompassed in Count II before this Court.  This matter can be effectively managed as a class action.

## DEFENDANT CLASS ALLEGATIONS

42.    Defendants joined here pursuant to Fed. R. Civ. P. 20 are also sued as a class pursuant to Fed. R. Civ. P. 23.

43.    Defendants are all linked both by their conduct, uniformly in violation of the FLSA, and by their participation in the H-2A Program.

44.    Defendants are also all linked by their membership or former membership in and/or activities in concert with the Georgia Growers Association and its agent, Dan Bremer.

45.    Defendants are all linked by their use of Dan Bremer as their agent to prepare clearance orders requesting H-2A workers.  During the three-year time period immediately preceding the filing of this Complaint, Dan Bremer, as agent for the Georgia Growers Association and the Defendant farms, worked under various corporate names including, but not limited to, AgWorks, Inc. and AgriStaff, Inc.  In this capacity, Dan Bremer served as the Defendants' agent for H-2A recruitment and H-2A compliance consulting.

46.    On information and belief, Defendants are further linked by a current or former joint defense agreement meant to protect Defendants from forced compliance with the Fair Labor Standards Act and the H-2A program regulations.

47.    Defendants are further linked by a common approach to reduce the costs of the H-2A Program through willful noncompliance with federal law.  On information and belief,

this noncompliance was devised by the Georgia Growers Association and Defendants'
shared agent, Dan Bremer.

## FACTUAL ALLEGATIONS

*A.    Clearance Orders and Work Approval*

48.    In or about November 2000, Defendants Georgia Growers Association, Inc. and
Bass Produce, Inc. submitted an application for temporary labor certification to the
United States Department of Labor.  This application sought admission of 120 H-2A
workers to be employed at various points between January 8, 2001 and November 8,
2001 on Bass Produce Inc.'s operations.  This application and the accompanying
documents were prepared for Bass Produce, Inc. by the Georgia Growers Association,
with the assistance of its agent, Dan Bremer.  A copy of the clearance order numbered
6937402 and submitted by Bass Produce, Inc. as part of its temporary labor certification
application is attached as Exhibit A.  Defendant Bass Produce, Inc. submitted other
substantially similar clearance orders in the three (3) year time period immediately
preceding the date on which this action was filed.  These clearance orders sought
admission of varying numbers of H-2A workers to be employed on Bass Produce, Inc.'s
operations.

49.    In or about January 2002, Defendant McLain Farms, Inc. submitted an application
for temporary labor certification to the United States Department of Labor.  This
application sought admission of 35 H-2A workers to be employed at various points
between March 20, 2002 and June 1, 2002 on McLain Farms, Inc.'s operations.  This
application and the accompanying documents were prepared for McLain Farms, Inc. by

the Georgia Growers Association, with the assistance of its agent, Dan Bremer.  A copy of the clearance order numbered 7056455 and submitted by McLain Farms, Inc. as part of its temporary labor certification application is attached as Exhibit B.  Defendant McLain Farms, Inc. submitted other substantially similar clearance orders in the three (3) year time period immediately preceding the date on which this action was filed.  These clearance orders sought admission of varying numbers of H-2A workers to be employed on McLain Farms, Inc.'s operations.

50.     In or about August 2000, Defendants Georgia Growers Association, Inc. and Lewis Taylor Farms, Inc. submitted an application for temporary labor certification to the United States Department of Labor.  This application sought admission of 145 H-2A workers to be employed at various points between September 22, 2000 and December 20, 2000 on Lewis Taylor Farms, Inc.'s operations.  This application and the accompanying documents were prepared for Lewis Taylor Farms, Inc. by the Georgia Growers Association, with the assistance of its agent, Dan Bremer.  A copy of the clearance order numbered 6730477 and submitted by Lewis Taylor Farms, Inc. as part of its temporary labor certification application is attached as Exhibit C.  Defendant Lewis Taylor Farms, Inc. submitted other substantially similar clearance orders in the three (3) year time period immediately preceding the date on which this action was filed.  These clearance orders sought admission of varying numbers of H-2A workers to be employed on Lewis Taylor Farms, Inc.'s operations.

51.     In or about July 2001, Defendant Wendell Roberson Farms, Inc. submitted an application for temporary labor certification to the United States Department of Labor.

13

This application sought admission of 168 H-2A workers to be employed at various points between September 27, 2001 and July 24, 2002 on Wendell Roberson Farms, Inc.'s operations. This application and the accompanying documents were prepared for Wendell Roberson Farms, Inc. by the Georgia Growers Association, with the assistance of its agent, Dan Bremer. A copy of the clearance order numbered 7010092 and submitted by Wendell Roberson Farms, Inc. as part of its temporary labor certification application is attached as Exhibit D. Defendant Wendell Roberson Farms, Inc. submitted other substantially similar clearance orders in the three (3) year time period immediately preceding the date on which this action was filed. These clearance orders sought admission of varying numbers of H-2A workers to be employed on Wendell Roberson Farms, Inc.'s operations.

52.     In or about February 2001, Defendants Gerald Womack, d/b/a Womack Farms, and Roscoe Meeks, d/b/a Roscoe Meeks & Sons, submitted an application for temporary labor certification to the United States Department of Labor. This application sought admission of 60 H-2A workers to be employed at various points between March 22, 2001 and November 30, 2001 on Gerald Womack and Roscoe Meeks' operations. This application and the accompanying documents were prepared for Gerald Womack and Roscoe Meeks by the Georgia Growers Association, with the assistance of its agent, Dan Bremer. A copy of the clearance order numbered 6958583 and submitted by Womack Farms as part of its temporary labor certification application is attached as Exhibit E. Defendants Gerald Womack, d/b/a Womack Farms, and Roscoe Meeks, d/b/a Roscoe Meeks & Sons submitted other substantially similar clearance orders in the three (3) year

14

time period immediately preceding the date on which this action was filed. These clearance orders sought admission of varying numbers of H-2A workers to be employed on Gerald Womack and Roscoe Meeks' operations.

53.    In or about February 2001, Defendant Gibbs Patrick Farms, Inc. submitted an application for temporary labor certification to the United States Department of Labor. This application sought admission of 142 H-2A workers to be employed at various points between April 16, 2001 and July 31, 2001 on Gibbs Patrick Farms, Inc.'s operations. This application and the accompanying documents were prepared for Gibbs Patrick Farms, Inc. by the Georgia Growers Association, with the assistance of its agent, Dan Bremer. A copy of the clearance order numbered 6961036 and submitted by Gibbs Patrick Farms, Inc. as part of its temporary labor certification application is attached as Exhibit F. Defendant Gibbs Patrick Farms, Inc. submitted other substantially similar clearance orders in the three (3) year time period immediately preceding the date on which this action was filed. These clearance orders sought admission of varying numbers of H-2A workers to be employed on Gibbs Patrick Farms, Inc.'s operations.

54.    In or about February 2001, Defendant Hamilton Growers, Inc. submitted an application for temporary labor certification to the United States Department of Labor. This application sought admission of 350 H-2A workers to be employed at various points between April 16, 2001 and July 31, 2001 on Hamilton Growers, Inc.'s operations. This application and the accompanying documents were prepared for Hamilton Growers, Inc. by the Georgia Growers Association, with the assistance of its agent, Dan Bremer. A copy of the clearance order numbered 6959883 and submitted by Hamilton Growers, Inc.

15

as part of its temporary labor certification application is attached as Exhibit G.

Defendant Hamilton Growers, Inc. submitted other substantially similar clearance orders

in the three (3) year time period immediately preceding the date on which this action was

filed. These clearance orders sought admission of varying numbers of H-2A workers to

be employed on Hamilton Growers, Inc.'s operations.

55.     In or about February 2001, Defendants Joe and Terry Baker, d/b/a Baker Farms,

submitted an application for temporary labor certification to the United States

Department of Labor. This application sought admission of 102 H-2A workers to be

employed at various points between April 16, 2001 and July 15, 2001 on Joe and Terry

Baker's operations. This application and the accompanying documents were prepared for

Joe and Terry Baker by the Georgia Growers Association, with the assistance of its agent,

Dan Bremer. A copy of the clearance order numbered 6962365 and submitted by Joe and

Terry Baker, d/b/a Baker Farms, as part of its temporary labor certification application is

attached as Exhibit H. Defendants Joe and Terry Baker, d/b/a Baker Farms submitted

other substantially similar clearance orders in the three (3) year time period immediately

preceding the date on which this action was filed. These clearance orders sought

admission of varying numbers of H-2A workers to be employed on Jerod & Rodney

Baker Farms, LLC's operations.

56.     In or about November 2001, Defendant Big 6 Farms, LLC submitted an

application for temporary labor certification to the United States Department of Labor.

This application sought admission of 200 H-2A workers to be employed at various points

between January 17, 2002 and August 10, 2002 on Big 6 Farms, LLC's operations. This

application and the accompanying documents were prepared for Big 6 Farms, LLC by the

Georgia Growers Association, with the assistance of its agent, Dan Bremer.  A copy of

the clearance order numbered 7043058 and submitted by Big 6 Farms, LLC as part of its

temporary labor certification application is attached as Exhibit I.  Defendant Big 6 Farms,

LLC submitted other substantially similar clearance orders in the three (3) year time

period immediately preceding the date on which this action was filed.  These clearance

orders sought admission of varying numbers of H-2A workers to be employed on Big 6

Farms, LLC's operations.

57.     In or about January 2002, Defendant Dickey Farms, Inc. submitted an application

for temporary labor certification to the United States Department of Labor.  This

application sought admission of 65 H-2A workers to be employed at various points

between January 7, 2003 and August 10, 2003 on Dickey Farms, Inc.'s operations.  This

application and the accompanying documents were prepared for Dickey Farms, Inc. by

the Georgia Growers Association, with the assistance of its agent, Dan Bremer.  A copy

of the clearance order numbered 7142139 and submitted by Dickey Farms, Inc. as part of

its temporary labor certification application is attached as Exhibit J.  Defendant Dickey

Farms, Inc. submitted other substantially similar clearance orders in the three (3) year

time period immediately preceding the date on which this action was filed.  These

clearance orders sought admission of varying numbers of H-2A workers to be employed

on Dickey Farms, Inc.'s operations.

58.     In or about January 2001, Defendant Georgia Cantaloupe Company, Inc.

submitted an application for temporary labor certification to the United States

Department of Labor.  This application sought admission of 50 H-2A workers to be employed at various points between March 20, 2001 and July 25, 2001 on Georgia Cantaloupe Company Inc.'s operations.  This application and the accompanying documents were prepared for Georgia Cantaloupe Company Inc. by the Georgia Growers Association, with the assistance of its agent, Dan Bremer.  A copy of the clearance order numbered 6954228 and submitted by Georgia Cantaloupe Company, Inc. as part of its temporary labor certification application is attached as Exhibit K.  Defendant Georgia Cantaloupe Company, Inc. submitted other substantially similar clearance orders in the three (3) year time period immediately preceding the date on which this action was filed. These clearance orders sought admission of varying numbers of H-2A workers to be employed on Georgia Cantaloupe Company, Inc.'s operations.

59.    In or about March 2001, Defendant L.G. Herndon Jr. Farms, Inc. submitted an application for temporary labor certification to the United States Department of Labor. This application sought admission of 70 H-2A workers to be employed at various points between April 21, 2001 and July 15, 2001 on L.G. Herndon Jr. Farms, Inc.'s operations. This application and the accompanying documents were prepared for L.G. Herndon Jr. Farms, Inc. by the Georgia Growers Association, with the assistance of its agent, Dan Bremer.  A copy of the clearance order numbered 6968822 and submitted by L.G. Herndon Jr. Farms, Inc. as part of its temporary labor certification application is attached as Exhibit L.  Defendant L.G. Herndon Jr. Farms, Inc. submitted other substantially similar clearance orders in the three (3) year time period immediately preceding the date

on which this action was filed.  These clearance orders sought admission of varying

numbers of H-2A workers to be employed on L.G. Herndon Jr. Farms, Inc.'s operations.

60.     In or about November 2001, Defendant Southern Orchard Supply Co., Inc., d/b/a

Lane Packing Co., submitted an application for temporary labor certification to the

United States Department of Labor.  This application sought admission of 225 H-2A

workers to be employed at various points between January 3, 2003 and August 10, 2003

on Southern Orchard Supply Co., Inc.'s operations.  This application and the

accompanying documents were prepared for Southern Orchard Supply Co., Inc. by the

Georgia Growers Association, with the assistance of its agent, Dan Bremer.  A copy of

the clearance order numbered 7041013 and submitted by Southern Orchard Supply Co.,

Inc. as part of its temporary labor certification application is attached as Exhibit M.

Defendant Southern Orchard Supply Co., Inc., d/b/a Lane Packing Co., submitted other

substantially similar clearance orders in the three (3) year time period immediately

preceding the date on which this action was filed.  These clearance orders sought

admission of varying numbers of H-2A workers to be employed on Southern Orchard

Supply Co., Inc.'s operations.

61.     In or about November 2001, Defendant Jeff Wainwright d/b/a Taylor Orchards

submitted an application for temporary labor certification to the United States

Department of Labor.  This application sought admission of 175 H-2A workers to be

employed at various points between January 3, 2002 and August 10, 2002 on Taylor

Orchards' operations.  This application and the accompanying documents were prepared

for Taylor Orchards by the Georgia Growers Association, with the assistance of its agent,

19

Dan Bremer.  A copy of the clearance order numbered 7041013 and submitted by Taylor Orchards as part of its temporary labor certification application is attached as Exhibit N. Defendant Taylor Orchards submitted other substantially similar clearance orders in the three (3) year time period immediately preceding the date on which this action was filed. These clearance orders sought admission of varying numbers of H-2A workers to be employed on Taylor Orchards' operations.

62.     Named Plaintiff Juan Duque-Tovar worked under a 2002 contract for the employer identified in paragraph 52.  Juan Duque-Tovar also worked under a 2000 contract for the employer identified in paragraph 48.  Juan-Duque Tovar's notice of consent to sue under FLSA is attached as part of Exhibit O.

63.     Named Plaintiff Antonio Maldonado-Garcia worked under contracts in 2001 and 2002 for the employer identified in paragraph 50.  Antonio Maldonado-Garcia's notice of consent to sue under FLSA is attached as part of Exhibit O.

64.     Named Plaintiff Pablo Rodriguez-Cazares worked under a 2001 contract for the employer identified in paragraph 48.  Pablo Rodriguez-Cazares's notice of consent to sue under FLSA is attached as part of Exhibit O.

65.     Named Plaintiff Enrique Santiago-Sanchez worked under contracts in 2000 and 2002 for the employer identified in paragraph 56.  Enrique Santiago-Sanchez's notice of consent to sue under FLSA is attached as part of Exhibit O.

66.     The Defendants' clearance orders included transportation arrangements as required by Department of Labor regulations governing the admission of H-2A workers, 20 C.F.R. § 655.102(b)(5).

67.     The United States Department of Labor ultimately approved the Defendants'
temporary labor certification applications, approving the admission of a total of more
than 2000 H-2A workers.

B.      *Recruitment in Mexico*

68.     In order to locate and hire Mexican nationals for employment as H-2A workers on
their respective operations, the Defendants relied on the Georgia Growers Association.
The Georgia Growers Association in turn engaged the services of Ricardo Rodriguez, a
recruiter with an office in Mexico, to locate and recruit H-2A workers for the Defendants'
operations.  The Georgia Growers Association authorized Ricardo Rodriguez and his
agents to make binding hiring commitments to Mexican nationals on behalf of the
Defendants.

69.     Agents of Ricardo Rodriguez recruited the Plaintiffs and the other class members
in their home villages and neighboring towns in rural Mexico.  On behalf of the
Defendants, Ricardo Rodriguez and his agents made binding hiring commitments to the
Plaintiffs and the other class members at the place of recruitment in the workers'
respective home villages and neighboring towns.

70.     The Plaintiffs and the other class members each paid a recruiting fee to Ricardo
Rodriguez or his agent to be included among the group of individuals selected to be H-
2A workers on the Defendants' operations.  After being recruited and hired in their local
areas, the Plaintiffs and the other class members came to work for the Defendants.

71.     After receiving a hiring commitment, each of the Plaintiffs and the other class members was instructed by Ricardo Rodriguez or his agents to report to the United States Consulate in Monterrey, Nuevo Leon, Mexico to obtain an H-2A visa.

72.     The Plaintiffs and the other class members paid their own travel and subsistence expenses in traveling from their homes to Monterrey, amounting to approximately $50.

73.     Prior to traveling to Monterrey, each of the Plaintiffs and the other class members paid approximately $45 (rising to $100 in 2003) as a visa reciprocity fee to Banamex, a Mexican banking organization.

74.     In Monterrey, each of the Plaintiffs and the other class members paid up to $100 to Ricardo Rodriguez for the United States Consulate's visa application fee for issuance of an H-2A visa and approximately $35 as a visa processing fee.

75.     Defendants did not compensate Ricardo Rodriguez for his services as their agent necessitating Rodriguez's charging of fees to the H-2A workers in addition to the fees itemized.

76.     Following the issuance of the H-2A visas, the Plaintiffs and the other class members boarded buses for their trip to the Defendants' operations.  The Plaintiffs and the other class members paid approximately $120 each for the cost of this transportation from Monterrey to Georgia.

77.     The Plaintiffs and the other class members each paid a $6.00 fee to the Immigration and Naturalization Service when they entered the United States, through Nuevo Laredo, Texas.  This fee was for the issuance of INS Form I-94 to each of the H-2A workers in accordance with 8 C.F.R. § 103.7.

22

C.     *Defendants' Failure to Reimburse*

78.     Defendants did not reimburse Plaintiffs for the costs Plaintiffs' incurred.  As a result of this failure to reimburse, Plaintiffs' first week's wages fell below the federal minimum wage.

79.     In addition, Defendants did not fully reimburse Plaintiffs for their inbound transportation expenses Plaintiffs incurred in traveling from their home villages in Mexico to their respective jobsites.

80.     At the conclusion of the contract periods, Defendants did not pay or provide for Plaintiffs' outbound transportation between Monterrey and their respective home villages.

81.     Defendants did not reimburse Plaintiffs for the sums they paid to Ricardo Rodriguez or his agents as recruiting fees related to their hiring for positions with the Defendants.

82.     Defendants did not reimburse Plaintiffs for the sums they spent to obtain their H-2A visas to work for the Defendants during the 2000-2003 seasons.  These charges consisted of the Banamex charge of $45 ($100 in 2003), the visa application fee of $100, and the visa processing fee of approximately $35.

83.     The Defendants did not reimburse the Plaintiffs for the $6 charge each of them incurred for issuance of INS Form I-94 at the U.S./Mexico border.

84.     Defendants' failure to reimburse Plaintiffs for all fees listed in this Complaint cost each of the Plaintiffs approximately $500, which constitutes a substantial portion of the Plaintiffs' yearly income.

## COUNT I  (Fair Labor Standards Act)

85.    This count sets forth a claim by the Plaintiffs for declaratory relief and damages for the Defendants' failure to pay minimum wages as required by the FLSA, 29 U.S.C. § 206(a).

86.    At all times relevant to this action, the Plaintiffs were employed as agricultural laborers involved in the production of produce and other goods for sale in interstate commerce.

87.    The Defendants failed to pay the Plaintiffs the required minimum wage for each compensable hour they worked in the Defendants' employ during the time periods such Plaintiffs were employed during the 2000, 2001, 2002, and 2003 seasons.

88.    The violations of the FLSA set forth herein resulted in part from the Defendants' failure to reimburse the Plaintiffs in the first week of their employment for the recruiting fees paid by the Plaintiffs to Ricardo Rodriguez or his agents.  These fees were incurred primarily for the benefit of the Defendants within the meaning of 29 C.F.R. §§ 531.32(c), 531.35.

89.    The violations of the FLSA set forth herein resulted in part from the Defendants' failure to reimburse the Plaintiffs in the first week of their employment for the expenses they incurred in securing their H-2A visas, including the visa reciprocity charges, the visa application fee, and the visa processing fee.  These fees were incurred primarily for the benefit of the Defendants within the meaning of 29 C.F.R. §§ 531.32(c), 531.35.

90.    The violations of the FLSA set forth herein resulted in part from the Defendants'
failure to reimburse the Plaintiffs in the first week of their employment for the $6 charge
they incurred in obtaining INS Form I-94 at the U.S./Mexico border.  These fees were
incurred primarily for the benefit of the Defendants within the meaning of 29 C.F.R. §§
531.32(c), 531.35.

91.    The violations of the FLSA set forth herein resulted in part from the Defendants'
failure to reimburse the Plaintiffs in the first week of their employment for their inbound
transportation expenses and from the Defendants' failure to reimburse Plaintiffs for their
outbound transportation expenses.  These expenses were incurred primarily for the
benefit of the Defendants within the meaning of 29 C.F.R. §§ 531.32(c), 531.35.

92.    As a consequence of the Defendants' violations of the FLSA as set forth in this
count, the Plaintiffs are entitled to recover their unpaid minimum wages, plus an equal
amount as liquidated damages, in accordance with 29 U. S.C. § 216(b).

## COUNT II  (Breach of Contract)

93.    This count sets forth a claim by Plaintiffs and the other members of the class for
damages and declaratory relief for the Defendants' breaches of its employment contracts
with the class members.

94.    The clearance orders filed by the Defendants (Exhibits A-N) constituted binding
contractual offers which were accepted by the Plaintiffs and the other class members by
traveling to the Defendants' respective jobsites and performing the tasks described in the
clearance orders.

95.     Defendants ratified the recruitment of Plaintiffs by Ricardo Rodriguez and others through their employment of Plaintiffs under the terms of the job orders.

96.     The Defendants breached their contracts with the Plaintiffs and the other members of the class by failing to reimburse these workers for the full cost of their inbound transportation expenses.  Rather than reimbursing these individuals for the full cost of the workers' travel between their home villages and the jobsite, the Defendants limited reimbursement to the cost of travel between Monterrey, Nuevo Leon and the jobsite, with the workers incurring the expense of traveling to Monterrey from their home villages.

97.     The Defendants breached their contracts with the Plaintiffs and the other members of the class by failing to provide outbound transportation to their home villages, which were the places from which the class members had come to work for the Defendants. Rather than providing transportation to the workers' home villages and the jobsite, the Defendants only provided transportation between Monterrey, Nuevo Leon and the jobsite, with the workers incurring the expense of traveling from Monterrey to their home villages.

98.     The Defendants breached their contracts with Plaintiffs by paying Plaintiffs in violation of federal law and by failing to pay Plaintiffs the highest of the federal minimum wage, the Adverse Effect Wage Rate, or state minimum wage in the first week of employment.

99.     As a direct consequence of these contractual breaches, the Plaintiffs and the other class members have suffered substantial damages.

26

## COUNT III (Attorneys' Fees)

100.   This count sets forth a claim by the Plaintiffs for attorneys' fees pursuant to O.C.G.A. § 13-6-11 for Defendants' willful refusal to properly pay for and/or reimburse Plaintiffs, and the class of persons Plaintiffs' represent, for costs associated with the H-2A program.  This count also sets forth a claim for attorneys' fees for Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b).

101.   Defendants' refusal to properly pay for and/or reimburse Plaintiffs, and the class of persons Plaintiffs' represent, for costs associated with the H-2A program is in direct violation of clearly established law. *Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228 (11th Cir. 2002).

102.   Defendants' willful refusal to pay for and/or reimburse Plaintiffs, and the class of persons Plaintiffs' represent, for costs associated with the H-2A constitutes bad faith and has caused Plaintiffs unnecessary trouble and expense, thus entitling Plaintiffs to reasonable attorneys fees and costs of litigation incurred in bringing this action against Defendants.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court enter an order:

(a)   Certifying this case as a statutory class action for back wages and liquidated damages pursuant to 29 U.S.C. § 216(b);

(b)     Certifying this case as a class action in accordance with Rule 23 of the Federal Rules of Civil Procedure with respect to the claims set forth in Count II;

(c)     Declaring that the Defendants have violated the FLSA, as set forth in Count I;

(d)     Declaring that the Defendants breached their employment contracts with the Plaintiffs and the class members by failing to reimburse or provide for transportation to qualifying workers between their home villages and the Defendants' jobsite;

(e)     Granting judgment in favor of the Plaintiffs on their FLSA claims as set out in Count I, and awarding each of them the amount of his unpaid minimum wages and an equal amount as liquidated damages;

(f)     Granting judgment in favor of the Plaintiffs and the other class members on their contract claims as set out in Count II, and awarding each of them their actual damages for the Defendants' contractual breaches;

(g)     Awarding the Plaintiffs the costs of litigation;

(h)     Awarding the Plaintiffs reasonable attorneys' fees with respect to their claims; and

(i)     Granting such further relief, including injunctive relief, as this Court deems just and appropriate.

This 15th day of August, 2003.

_____

Lisa C. Jern
Georgia Bar No. 271010
Allegra J. Lawrence
Georgia Bar No. 439797
Charles T. Lester
Georgia Bar No. 447200
Andrew W. Broy
Georgia Bar No. 090180
Cindy S. Spindler
Georgia Bar No. 622924
SUTHERLAND, ASBILL & BRENNAN LLP
999 Peachtree Street, N.E.
Atlanta, GA  30309-3996
(404) 853-8000

Attorneys for Plaintiffs